# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3656

_____

United States of America,        *
        *
        Appellee,        *
        *   Appeal from the United States
        v.        *   District Court for the
        *   Western District of Missouri.
Robert L. Ferrara,        *
        *
        Appellant.        *

_____

Submitted:   May 15, 2003

Filed:   July 2, 2003
_____

Before WOLLMAN, MAGILL, and BEAM, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

After Robert L. Ferrara pled guilty to six counts of contempt of court in violation of 18 U.S.C. § 401, the district court[1] sentenced him to 125 months' imprisonment in accordance with U.S.S.G. § 2F1.1. Ferrara appeals his sentence, arguing, inter alia, that the district court's selection of § 2F1.1 as the most analogous guideline was erroneous. We affirm.

_____

[1]The Honorable Nanette Laughrey, United States District Judge for the Western District of Missouri.

I.

Beginning in the early 1980s, Ferrara fraudulently sold business opportunities. He accepted money from his customers, knowing that they would not receive some or all of the things he had promised, including vending machines, sales locations, training, and a money-back guarantee. When customers began complaining, Ferrara would restart his scheme under a new company with a different name. In response to a 1983 lawsuit brought under the Federal Trade Commission Act, 15 U.S.C. § 45, and 16 C.F.R. § 436, Ferrara entered into a consent agreement with the United States. The consent judgment entered by the district court remains in effect today and requires Ferrara to comply with the disclosure requirements of 16 C.F.R. § 436.

Between 1993 and 2001, Ferrara opened and closed eight companies. Each company offered business ventures for sale, using classified advertisements and toll-free phone numbers. Potential customers were advised that in exchange for their initial investment, they would receive a set of vending machines, locations for those machines, training, support, and a guarantee that if the customer earned less money than Ferrara promised, he would receive a full refund. More than 150 people invested in the ventures offered by Ferrara's companies. Although some received part of what was promised, many received nothing at all. Every investor lost money on his investment, and none received a return of their investment pursuant to the money-back guarantee.

On January 17, 2002, Ferrara was charged with six violations of the 1983 court order. At Ferrara's January 23, 2002, initial appearance, the magistrate judge[2] informed Ferrara that the maximum penalty for criminal contempt was life in prison. In its motion to detain Ferrara pending trial, the government argued that Ferrara's

---

[2]The Honorable Robert E. Larsen, United States Magistrate Judge for the Western District of Missouri.

relevant conduct greatly increased the fraud loss total and that, pursuant to U.S.S.G. § 2F1.1, Ferrara could face up to 125 months in prison. Ferrara pled guilty to all charges, specifically admitting that he had made and had caused others to make false representations to encourage the sale of the franchises involved in the six counts of the indictment. He also admitted that the disclosure statements given to the six individuals had been inaccurate and had contained material omissions. At the October 2, 2002, sentencing hearing, the government called four witnesses. One was the victim described in count five, two were victims of Ferrara's relevant conduct, and one was an FBI case agent who testified about the scope of the fraudulent schemes Ferrara operated from 1993 through 2001. Ferrara stipulated that, if U.S.S.G. § 2F1.1 were applied, the appropriate fraud loss total was $2.7 million. After arriving at a total offense level of 24 and a criminal history category of VI, the district court sentenced Ferrara to 125 months' imprisonment, five years' supervised release, and $102,674.90 in restitution.

## II.

We review the district court's application and construction of the sentencing guidelines <u>de novo</u>, and its findings of fact for clear error. <u>United States v. Hunt</u>, 171 F.3d 1192, 1195-96 (8th Cir. 1999).

Ferrara first contends that the district court erred by sentencing him pursuant to U.S.S.G. § 2F1.1,[3] the guideline applicable to fraud and deceit, rather than U.S.S.G. § 2J1.2, the guideline applicable to obstruction of justice. As indicated earlier, Ferrara pled guilty to six violations of 18 U.S.C. § 401. The guideline provision applicable to violations of § 401 is U.S.S.G. § 2J1.1, which simply states "Apply §2X5.1 (Other Offenses)." Section 2X5.1 applies when there is no expressly

---

[3]All references to the United States Sentencing Guidelines are to the November 1, 2000, edition.

applicable guideline, and directs the court to apply the most analogous guideline. United States v. Osborne, 164 F.3d 434, 436 (8th Cir. 1999). "If there is not a sufficiently analogous guideline, the provisions of 18 U.S.C. § 3553(b) shall control." U.S.S.G. § 2X5.1.

In reviewing the district court's application of § 2X5.1, we review de novo the court's determination of whether there is a sufficiently analogous guideline, and, where there are several analogous guidelines, we give due deference to the court's fact-bound selection of the most analogous guideline. Osborne, 164 F.3d at 437-38 (applying § 2X5.1 to vehicular battery committed by non-Indian on Indian reservation). Ferrara does not contend on appeal that there is no analogous guideline; rather, he argues that the district court erroneously determined that the fraud guideline, not the obstruction guideline, was the most analogous. Although we have said that this "issue most generally will involve comparing the elements of federal offenses to the elements of the crime of conviction," id. at 437, the elements of contempt of court are of little help in determining the most analogous guideline. The Sentencing Commission did not provide a specific guideline because "misconduct constituting contempt varies significantly" and is "highly context-dependent." U.S.S.G. § 2J1.2 cmt. app. n.1. "In certain cases, the offense conduct will be sufficiently analogous to § 2J1.2 (Obstruction of Justice) for that guideline to apply." Id. Implicitly, in other cases another guideline may be the most analogous even though the elements of the contempt of court offense are unchanged. For example, as Application Note 2 explains, where the contempt involves willful failure to pay child support, the appropriate guideline is the Larceny, Embezzlement and Other Forms of Theft guideline. Accordingly, as we did in Osborne, we must look to the "actual conduct of the individual defendant" in reviewing the district court's selection of the most analogous guideline. Id. at 439.

Ferrara fraudulently sold business opportunities to many customers, resulting in a loss of $2.7 million to his victims. Pursuant to his guilty plea, Ferrara admitted

that he made and caused others to make misrepresentations and false statements to encourage the sale of the franchises referenced in the counts of conviction. He also admitted that he provided false and misleading disclosure statements to some of his customers. This is the type of conduct commonly sentenced under U.S.S.G. § 2F1.1. See U.S.S.G. § 2F1.1 cmt. background; United States v. Lohan, 945 F.2d 1214, 1218 (2d Cir. 1991) (applying § 2F1.1 to violation of court order intended to prevent fraud in commodities market). According the district court the deference it is due, we find no error in its choice of the § 2F1.1 as the most analogous guideline.

Ferrara also contends that the district court erred by assessing criminal history points for two driving-while-intoxicated convictions that resulted in suspended impositions of sentence. That imposition of sentence was suspended does not preclude the district court from considering a conviction under the sentencing guidelines. "If the Guidelines can treat a bare conviction for which the defendant has not yet stood sentencing as itself a 'prior sentence' . . . , then we conclude that we do no violence to the Guidelines by holding that § 4A1.2(a)(3)'s directions to count a conviction for which the imposition of sentence has been suspended as a prior 'sentence[]' . . . ." United States v. Holland, 195 F.3d 415, 417-18 (8th Cir. 1999). Each of Ferrara's driving-while-intoxicated convictions resulted in one year of probation. Accordingly, these convictions were properly included in the calculation of Ferrara's criminal history. See U.S.S.G. § 4A1.2(c)(1)(A).

Lastly, Ferrara contends that the district court violated the principles set forth in Apprendi v. New Jersey, 530 U.S. 466 (2000), when it considered losses due to his fraudulent schemes other than those charged in the indictment. Because Ferrara's sentence of 125 months' imprisonment falls within the maximum sentence of life imprisonment allowable for a criminal contempt of court conviction, no Apprendi violation occurred. See United States v. Titlbach, 300 F.3d 919, 922 (8th Cir. 2002) (citing Harris v. United States, 536 U.S. 545 (2002)).

The judgment is affirmed.

A true copy.

     Attest:

         CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.